Christopher B. Dolan (#165358)
Aimee E. Kirby (#216909)
Mary C. Barnes (#271777)
**THE DOLAN LAW FIRM**
1438 Market Street
San Francisco, California 94102
Telephone:    (415) 421-2800
Facsimile:     (415) 421-2830

Attorneys for Plaintiff
Richard Knudsen

SEALED
BY COURT ORDER

FILED
SEP 27 2013
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT OF CALIFORNIA

## SAN FRANCISCO

### UNLIMITED JURISDICTION

Richard Knudsen, an individual, Qui Tam
Plaintiff, on behalf of himself and United
States of America and its Federal Agencies, a
public entity,

                    Plaintiffs,

            v.

SPRINT COMMUNICATION
COMPANY LP, SPRINT NEXTEL,
SPRINT NEXTEL CORPORATION,
SPRINT SOLUTIONS, INC., SPRINT
SPECTRUM L.P.
SPRINT SPECTRUM LIMITED
PARTNERSHIP
SPRINT SPECTRUM LP
NEXTEL COMMUNICATIONS
INCORPORATED
NEXTEL COMMUNICATIONS OF THE
MID ATLANTIC INCORPORATED
and Does 1-100

Case No.:  CV 13  4476

COMPLAINT FOR DAMAGES
(Under Seal)

Trial Date: TBD

RAW

COMES NOW, RICHARD KNUDSEN, the Qui Tam Plaintiff, who sets forth the following causes
of action against Defendants, and who alleges as follows:

**INTRODUCTION**

1.     This is an action to recover damages and civil penalties on behalf of the UNITED STATES of AMERICA arising out of false statements, false claims made and presented, and/or excessive overcharges knowingly presented and improperly retained Defendants, and/or their agents, employees, and co-conspirators in violation of the Federal False Claims Act to the UNITED STATES OF AMERICA & U.S. FEDERAL GOVERNMENT.  The action arises under the provisions of Federal False Claims Act, 31 U.S.C. Code Section 3729, et. Seq. (hereinafter referred to as the Federal False Claims Act).

2.     Under the Federal False Claims Act, this Complaint is to be filed *in camera* and remain under seal for a period of at least sixty (60) days and shall not be served on the Defendant until the Court so orders.  The Government may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence and information.

3.     Mr. Knudsen has, pursuant to (1) access to the **Federal Procurement Data System** (FPDS)[1], a single source for US government-wide procurement data; (2) State of California Public Records Act, and in other ways obtained non-public information about the frauds detailed herein (i.e., QUI TAM'S PLAINTIFF'S Compliance Report on the FALSE CLAIMS DEFENDANTS to the City of Los Angeles[2] City Controller).  QUI TAM PLAINTIFF incorporates as **Exhibit "A"** a true and correct copy of Mr. Knudsen's Compliance Report of FALSE CLAIM DEFENDANTS.  Such Public requests were submitted by Mr. Knudsen to, and responded by, agencies of the State of California, to wit: The State of California Department of General Services and administrator of the California Wireless Contract (**Exhibit B,** October 3, 2005, October 2, 2010, California Wireless

---

[1] The Federal Procurement Data Center (FPDC), part of the U.S. General Services Administration, manages the Federal Procurement Data System (FPDS).

[2] In the United States, federal assistance, also known as federal aid, federal benefits, or **federal funds**, is defined as any federal program, project, service, and activity provided by the federal government that directly assists domestic governments such as the City and County of Los Angeles.

The assistance, which can reach to over $400 billion annually, is provided and administered by federal government agencies, such as the U.S. Department of Housing and Urban Development, Homeland Security and the U.S. Department of Health and Human Services, through special programs to recipients.  QUI TAM PLAINTIFF, alleges, on information and belief, the City of Los Angeles Police, Fire, Department of Health; Housing and Urban Development and other City of Los Angeles Departments and other recipients in the County of Los Angeles used federal funds and overpaid FALSE CLAIM DEFENDANTS for services and obligations (false claims) which were allegedly not rendered by FALSE CLAIM DEFENDANTS to City, State and Federal Government Agencies.

THE
ƆOLAN
LAW
FIRM
TRIAL LAWYERS
HE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

Contracts and Amendments). Mr. Knudsen has, prior to filing this complaint, authored, managed and analyzed the production of the billing data and documents provided by FALSE CLAIM DEFENDANTS from Mr. Knudsen's consultation and as a direct contributor to the City of Los Angeles City Controller's January 4, 2013 subpoena to FALSE CLAIMS DEFENDANTS.

4.     In addition, such public requests were submitted by Mr. Knudsen to, and responded by, agencies of the State of California, to wit: The State of California Department of General Services and administrator of the California Wireless / Western States Contracting Alliance (WSCA) Contract (**"Exhibit B"**).  Mr. Knudsen has, prior to filing this complaint, authored, managed and analyzed the production of the data and documents provided by False Claim Defendants from Mr. Knudsen's consultation and as the direct contributor to the City of Los Angeles City Controller's January 4, 2013 subpoena to FALSE CLAIMS DEFENDANTS.

5.     In addition, Mr. Knudsen has, prior to filing this Complaint, voluntarily disclosed to the Government (former and current employees at the City of Los Angeles City Attorney's Office) the information on which the allegations or transactions comprising the frauds (**Exhibit A**, City of Los Angeles Compliance Report - SprintDFCR-0023 V.1.2.)) detailed herein are based.

6.     Insomuch as there has been no public disclosure, as defined in 31 U.S.C. § 3730(e)(4), of the frauds detailed herein and, pursuant to the Federal False Claims Act, 31 U.S.C. § 3730(e)(4)(B), Mr. Knudsen asserts he is **the** "original source" of the frauds detailed herein within the meaning of 31 U.S.C. § 3730(e)(4)(B).

## PARTIES

7.     Plaintiff RICHARD KNUDSEN, hereinafter ("QUI TAM PLAINTIFF"), is a citizen and resident of the State of California, and brings this action on behalf of the UNITED STATES FEDERAL GOVERNMENT ("FEDERAL GOVERNMENT").  As required under the Federal False Claims Act, QUI TAM PLAINTIFF has furnished to the Attorney General of the State of California simultaneous with or prior to the filing of this Complaint, a statement of all material evidence and information related to the Complaint.  This disclosure statement supports the false claims submitted in the form of claims for the improper billing of Government Entity for Cellular Plans.

8.     QUI TAM PLAINTIFF has worked as an outside consultant in the technical support area of Private and Public Entity Telecommunication Rate Plan Optimization–and Contract Compliance Auditing.  In that job he developed intimate familiarity with the ways in which the FALSE CLAIMS DEFENDANT's entered into contracts with the FEDERAL GOVERNMENT for their use and the

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
4E DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

Carrier management of cellular services. In this capacity the QUI TAM PLAINTIFF also has direct and independent knowledge of the false claim through direct evaluation FALSE CLAIMS DEFENDANT'S: (1) billing data, (2) monthly usage, (3) price plan analysis (PPA) and (4) quarterly account review and recommendation (ARR) reports provided by the FALSE CLAIMS DEFENDANTS regarding their account billing, sales and account management support.

9.     Defendant SPRINT CORPORATION (NYSE: S), Inc., is a Delaware corporation with a principal place of business in Kansas City, Kansas. This corporation is a holding company and the corporate parent of the following companies:

   A.   Sprint Communication Company, LP, Defendant

   B.   Sprint Nextel, Defendant

   C.   Sprint Nextel Corporation, Defendant

   D.   Sprint Solutions, Inc., Defendant

   E.   Sprint Spectrum, L.P.

   F.   SPRINT SPECTRUM L.P.

   G.   SPRINT SPECTRUM LIMITED PARTNERSHIP

   H.   SPRINT SPECTRUM LP

   I.   NEXTEL COMMUNICATIONS INCORPORATED

   J.   NEXTEL COMMUNICATIONS OF THE MID ATLANTIC INCORPORATED

10.    QUI TAM PLAINTIFF alleges, on information and belief, that all of the above companies were equally involved in the acts herein and QUI TAM PLAINTIFF is unable to distinguish the acts of one from the acts of the other.

11.    SPRINT CORPORATION provides wireless and wireline communications services to consumers, businesses, and government users in the United States, Puerto Rico, and the U.S. Virgin Islands. It operates in two segments, Wireless and Wireline. The Wireless segment provides wireless data transmission services, including mobile productivity applications, such as Internet access, messaging, and email services; wireless photo and video offerings; location-based capabilities comprising asset and fleet management, dispatch services, and navigation tools; mobile entertainment applications; and local and long distance wireless voice services, as well as voicemail, call waiting, three-way calling, caller identification, directory assistance, and call forwarding

COMPLAINT

services. It also offers voice and data services internationally through roaming arrangements; and customized wireless services to large companies and government agencies, as well as sells accessories, such as carrying cases, hands-free devices, batteries, battery chargers, and other devices to subscribers, agents, and other third-party distributors. The Wireline segment provides wireline voice and data communications, including domestic and international data communications using various protocols, such as multiprotocol label switching technologies and Internet protocol to other communications companies, and targeted business and consumer subscribers; and wholesale voice local and long distance services, and digital voice services to cable multiple system operators. Sprint Corporation offers its wireless and wireline services under the Sprint, Boost Mobile, Virgin Mobile, and Assurance Wireless brands. SPRINT CORPORATION operates as a Subsidiary of SOFTBANK CORP (As of July 10, 2013.)

6.    SPRINT NEXTEL CORPORATION changed its name to SPRINT CORPORATION on July 10, 2013. This company was founded in 1899 and is headquartered in Overland Park, Kansas. As of July 10, 2013, all Defendants operated in Southern California, and at all relevant times were doing business within the City of Los Angeles, State of California.

7.    At the time of this filing, all Defendants operated in Northern California, and at all relevant times were doing business within the City and County of San Francisco, State of California.

8.    SPRINT COMMUNICATION COMPANY LP, SPRINT NEXTEL, SPRINT NEXTEL CORPORATION, SPRINT SOLUTIONS, INC., SPRINT SPECTRUM, L.P., SPRINT SPECTRUM LIMITED PARTNERSHIP, SPRINT SPECTRUM LP, NEXTEL COMMUNICATIONS INCORPORATED, NEXTEL COMMUNICATIONS OF THE MID ATLANTIC INCORPORATED.

and Does 1-100, inclusive, are hereinafter referred to as the "FALSE CLAIM DEFENDANTS."QUI TAM PLAINTIFF alleges, on information and belief, that all of the above companies were equally involved in the acts herein and QUI TAM PLAINTIFF is unable to distinguish the acts of one from the acts of the other. The nature and extent of the involvement of the various Defendants will be determined over the course of discovery in this matter.

9.    At all times herein mentioned, each of the FALSE CLAIMS DEFENDANTS was an agent, servant or employee of each of the remaining Defendants, and was at all times acting within the purpose or scope of said agency or employment, and was acting with the express or implied knowledge, permission or consent of the remaining Defendants, and each of them.

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94108
L: (415) 421-2800
X: (415) 421-2830

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 100, inclusive, and each of them, are unknown to QUI TAM PLAINTIFF who, therefore, sues these Defendants by such fictitious names and will ask leave of court to amend this Complaint when the same shall have been ascertained. QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges that each Defendant designated herein as a Doe is responsible for the events and happenings referred to herein which caused the submission of false claims to the FEDERAL GOVERNMENT.

11.     At all times herein mentioned, each of the FALSE CLAIMS DEFENDANTS was an agent, servant or employee of each of the remaining Defendants, and was at all times acting within the purpose or scope of said agency or employment, and was acting with the express or implied knowledge, permission or consent of the remaining Defendants, and each of them.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter under and pursuant to 31 U.S.C. §§ 3730(b) and 3732(a). This Court also has jurisdiction pursuant to 28 U.S.C §§ 1331 and 1345 because the United States is a party to this matter and the causes of action set forth herein are founded upon a law of the United States of America.

13.     This Court has personal jurisdiction over FALSE CLAIMS DEFENDANTS pursuit to 31 U.S.C. § 3732(a) which provides that "(a)ny action under section 3730 may be brought in any judicial district in which the FALSE CLAIMS DEFENDANTS can be found, resides, transacts business or in which any act proscribed by section 3729 occurred."

14.     This Court represents the proper venue in this San Francisco district pursuant to 31 U.S.C. § 3732(a) because the allegations sued upon arose in the United States San Francisco District of California; the misrepresentations, material omissions, breaches of fiduciary (obligations) duties, and breaches of written contracts, as alleged herein, that were made by FALSE CLAIMS DEFENDANTS occurred in the State of California. Moreover, FALSE CLAIM DEFENDANTS can be found in, resides in, and/or transacts business in the Northern District of San Francisco, and because some of the violations of 31 U.S.C. § 3729 et seq. described herein occurred within this judicial district.

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

## ALLEGATIONS COMMON TO ALL COUNTS

15.     Through QUI TAM PLAINTIFF's direct and independent analysis FALSE CLAIMS DEFENDANTS has submitted or caused the submission of false claims worth an estimated **$916,164,258 ($916.16 Million)** in "single damages" to **the 701+ Federal Government Agencies/Departments.**

16.     QUI TAM PLAINTIFF seeks prejudgment interest at the lawful rate in an amount believed to be in excess of **$150,000,000** and continuing.

17.     When the treble damages are applied QUI TAM PLAINTIFF conservatively estimates that the total amount to be recovered from the FALSE CLAIMS DEFENDANT is **$2,748,492,774 ($2.75 Billion)** for the following **701+ United States of America's Federal Contracting Agencies, Branches and/or** Departments:

Legislative branch: (1) Architect of the Capitol; (2) United States Botanic Garden; (3) Comptroller and Auditor General; (4) Comptroller and Auditor (5) General; (5) United States Government Printing Office; (6) Government Printing Office Police; (7) Congressional Budget Office and its 8 divisions; (8) Budget & Financial Analysis; (9) Health and Human Services; (10) Macroeconomic Analysis; (11) Management, Business, and Information Services; (12) Microeconomic Studies; (13) National Security; (14) Tax Analysis; (15) Library of Congress; (16) Congressional Research Service; (17) United States Copyright Office; (18) United States Congress Office of Compliance; (19) United States Capitol Guide Service; (20) United States Capitol Police; Judicial Branch: (21) United States federal courts; (22) Supreme court; (23) United States courts of appeals; (24) United States Court of Appeals for the District of Columbia Circuit; (25) United States Court of Appeals for Veterans Claims; (26) United States Court of Appeals for the Armed Forces; (27) United States Court of Appeals for the Federal Circuit; (28) United States Foreign Intelligence Surveillance Court of Review; (29) United States district court; (30) United States federal judicial district; (31) United States Alien Terrorist Removal Court; (32) United States Court of Federal Claims; (33) United States Court of International Trade; (34) United States bankruptcy court (for each district court); (35) United States Court of Federal Claims; (36) United States Court of International Trade; (37) United States Foreign Intelligence Surveillance Court; (38) United States Tax Court; (39) Administrative Office of the United States Courts; (40) Federal Judicial Center; (41) Judicial Conference of the

United States; (42) United States Sentencing Commission; (43) United States Sentencing Commission. United States Federal Executive Departments: (44) Council of Economic Advisers; (45) Council on Environmental Quality; (46) United States Domestic Policy Council; (47) United States National Economic Council; (48) United States National Security Council; (49) Office of Administration; (50) President's Intelligence Advisory Board; (51) Office of Science and Technology Policy; (52) Executive Office of the President of the United States; (53) Office of the First Lady of the United States; (54) President's Council on Jobs and Competitiveness; (55) President's Intelligence Advisory Board; (56) Office of the United States Trade Representative; (57) White House Office; (58) White House Military Office; United States Department of Agriculture: (60) Agricultural Marketing Service; (61) Agricultural Research Service; (62) Animal and Plant Health Inspection Service; (63) Center for Nutrition Policy and Promotion; (64) Economic Research Service; (65) Farm Service Agency; (66) Commodity Credit Corporation; (67) Food and Nutrition Service; (68) Food Safety and Inspection Service; (69) Foreign Agricultural Service; (70) United States Forest Service; (71) Grain Inspection, Packers and Stockyards Administration; (72) National Agricultural Statistics Service; (73) National Institute of Food and Agriculture; (74) Natural Resources Conservation Service; (75) Risk Management Agency; (76) Federal Crop Insurance Corporation; (77) USDA Rural Development; (78) Rural Housing Service; (79) Rural Utilities Service; (80) United States Department of Commerce: (81) United States Census Bureau; (82) Bureau of Economic Analysis; (83) Bureau of Industry and Security; (84) Economic Development Administration; (85) Economics and Statistics Administration; (86) International Trade Administration; (87) Invest in America; (88) Minority Business Development Agency; (89) National Oceanic and Atmospheric Administration; (90) National Oceanic and Atmospheric Administration Commissioned Corps; (91) National Oceanic and Atmospheric Administration; (92) National Marine Fisheries Service; (93) National Weather Service; (94) National Telecommunications and Information Administration; (95) United States Patent and Trademark Office; (96) National Institute of Standards and Technology; (97) National Technical Information Service; United States Department of Defense: United States Department of the Army; (98) United States Department of the Army; (99) Army Commands (ACOM); (100) Army Service Component Commands (ASCC); (101); Field army headquarters; (102) Eighth United States Army (EUSA); (103) United States Military Academy (USMA); (104) United States Army Installation Management Command (IMCOM); (105) Army Network Enterprise Technology Command (NETCOM); (106)

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
E DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

United States Army Intelligence and Security Command (INSCOM); (107) U.S. Army Test & Evaluation Command (ATEC); (108) United States Army Criminal Investigation Command (USACIDC); (109) United States Army Medical Command (MEDCOM); (110) United States Army Military District of Washington (MDW); (111) United States Army Corps of Engineers (USACE); (112) United States Army Reserve Command (USARC); (113) United States Army Cyber Command (ARCYBER); (114) Unified Combatant Command; (115) United States Secretary of the Army; (116) United States Under Secretary of the Army; (117) Office of the Administrative Assistant to the Secretary of the Army; (118) Senior Executive Service (United States); (119) Chief of Staff of the United States Army; (120) Joint Chiefs of Staff; (121) Vice Chief of Staff of the United States Army; (122) Lieutenant general (United States); (123) Sergeant Major of the Army; (124) Judge Advocate General of the United States Army; (125) Judge Advocate General of the United States Army; (126) United States Army Reserve; (127) Chief of the National Guard Bureau; (128) United States Army Provost Marshal General; (129) Surgeon General of the United States Army; (130) United States Army Corps of Engineers; (131) Army Corps of Engineers Chiefs of Engineers; (132) Assistant Secretary of the Army (Civil Works); (133) The United States Army Corps of Engineers Great Lakes and Ohio River Division (LRD); (134) The United States Army Corps of Engineers Mississippi Valley Division (MVD); (135) Mississippi River Commission (MRC); (136); The North Atlantic Division of the U.S. Army Corps of Engineers; (137) The United States Army Corps of Engineers Northwestern Division (NWD); (138) The United States Army Corps of Engineers Pacific Ocean Division (POD); (139) The United States Army Corps of Engineers South Atlantic Division (SAD); (140) The United States Army Corps of Engineers South Atlantic Division (SAD); (141) The United States Army Corps of Engineers South Pacific Division (SPD); (142) The United States Army Corps of Engineers Southwestern Division (SWD); (143); Engineer Research and Development Center (ERDC) is a US Army Corps of Engineers (USACE); (144) Finance Center, U.S. Army Corps of Engineers (CEFC); (145) Humphreys Engineer Center Support Activity (CEHEC); (146); Army Geospatial Center; (147) Marine Design Center (CEMDC); (148) USACE Logistics Activity (ULA); (149) Enterprise Infrastructure Services (CEEIS); (150) Deployable Tactical Operations System (DTOS); (151) United States Army Installation Management Command; (152) United States Army Major Commands "MACOM"; (153) Management Agency (IMA); (154) former Community and Family

Support Center; (155) United States Army's Family and MWR Programs; (156) United States Army Installation Management Command; (157) United States Department of the Navy (DON):

(158) Secretary of the Navy (SECNAV); (159) United States Navy Regulations; (160) United States Coast Guard (USCG); (161) Uniformed services of the United States; (162) Operated by the Coast Guard, the National Response Center (NRC); (163) Federal On Scene Coordinator; (164) Marine Information for Safety and Law Enforcement (MISLE); (165) United States Coast Guard Academy; (166) United States Coast Guard Officer Candidate School; (167) Naval Air Station Pensacola; (168) Under Secretary of the Navy; (169) Assistant Secretary of the Navy (ASN); (170) Assistant Secretary of the Navy (Research, Development and Acquisitions); (171) Assistant Secretary of the Navy (Shipbuilding and Logistics); (172) Assistant Secretary of the Navy (AIR); (173) Under Secretary of Defense for Acquisition, Technology and Logistics; (174) Assistant Secretary of the Navy (Manpower and Reserve Affairs); (175) General Counsel of the Navy; (176) Judge Advocate General of the Navy; (177) Chief of Naval Operations; (178) Vice Chief of Naval Operations (VCNO); (179) Master Chief Petty Officer of the Navy (MCPON); (180) United States Fleet Forces Command; (181) Combined Joint Operations from the Sea - Centre of Excellence (CJOS COE); (182); Military Sealift Command (MSC): (183) Naval Meteorology and Oceanography Command (NMOC) (COMNAVMETOCCOM; (184) Fleet Numerical Meteorology and Oceanography Center (FNMOC); (185) United States Naval Observatory (USNO); (186) Naval Oceanographic Office (NAVOCEANO); (187) Naval Oceanography Operations Command; (188); Naval Meteorology and Oceanography Professional Development Center; (189) Navy Munitions Command; (190) Navy Warfare Development Command (NWDC); (191) Naval Air Force U.S. Atlantic Fleet (AIRLANT); (192) Submarine Force U.S. Atlantic Fleet (SUBLANT}; (193) Naval Surface Forces Atlantic (NAVSURFLANT); (194) Navy Expeditionary Combat Command (NECC); (195) Navy Cyber Forces (CYBERFOR); (196) United States Fleet Forces Command (USFLTFORCOM); (197) Logistics – Military Sealift Command Atlantic (LOG – MSCLANT); (198) Theater Antisubmarine Warfare Commander – Commander Submarine Force (TASC - CSL); (199) Mine Warfare – Naval Mine and Anti-Submarine Warfare Command (MIW – NMAWC); (200) Defense Support of Civil Authorities – Navy Expeditionary Combat Command (DSCA – COMNECC); (201) Reconnaissance – Commander Patrol and Reconnaissance Group (RECON – CPRG); (202) Humanitarian Assistance and Disaster Relief – Expeditionary Strike Group Two (HADR – ESG 2); (203) Commander, U.S.

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

Fleet Forces (COMUSFF); (204) Maritime Headquarters – Joint Forces Maritime Component Commander North (MHQ – COMUSFF); (205) Logistics – Military Sealift Command Atlantic (LOG – MSCLANT); (206) Theater Antisubmarine Warfare Commander – Commander Submarine Force (TASC - COMNAVSUBFOR); (207) Mine Warfare – Naval Mine and Anti-Submarine Warfare Command (MIW – NMAWC); (208) Defense Support of Civil Authorities – Navy Expeditionary Combat Command (DSCA – COMNECC); (208) Reconnaissance – Commander Patrol and Reconnaissance Group (RECON – CPRG); (209) Humanitarian Assistance and Disaster Relief – Expeditionary Strike Group Two (HADR – ESG 2); (210) Naval Education and Training Command; (211) Naval Meteorology and Oceanography Command (COMNAVMETOCCOM) or NMOC; (212) United States Fleet Forces Command (USFLTFORCOM; (213) Naval Oceanographic Office; (214) Fleet Numerical Meteorology and Oceanography Center (FNMOC); (215) Space and Naval Warfare Systems Command (SPAWAR); (216) Assistant Secretary of the Navy (Research, Development and Acquisition) (abbreviated ASN RDA); (217) Space and Naval Warfare Systems Center Atlantic; (218) Space and Naval Warfare Systems Center Pacific; (219) Naval Facilities Engineering Command (NAVFAC); (220) Naval Supply Systems Command (NAVSUP); (221) Naval Air Systems Command (NAVAIR); (222) Naval Air Station Patuxent River (IATA: NHK, ICAO: KNHK, FAA LID: NHK); (223) United States Naval Test Pilot School (USNTPS; (224) U.S. Air Force Test Pilot School; (225) Edwards Air Force Base (AFB) (IATA: EDW, ICAO: KEDW, FAA LID: EDW); (226) 412th Test Wing of the Air Force Materiel Command (AFMC); (227) Naval Air Engineering Station Lakehurst; (228) Training Systems, Instructional Systems, Orlando, Florida; Program Executive Officer, Tactical Programs (PEO(T)); (229); Program Executive Officer, Assault and ASW Programs (PEO(A)); (230) Program Executive Officer, Weapons and Unmanned Vehicles (PEO(U&W)); (231) Naval Air Systems Command (NAVAIR); (232) Naval Sea Systems Command (NAVSEA); (233) Space and Naval Warfare Systems Command (SPAWAR); (234) Naval Facilities Engineering Command (NAVFAC); (235) Naval Supply Systems Command (NAVSUP); Naval Facilities Engineering Command (NAVFAC; (231) Washington Navy Yard (WNY); (236) Surgeon General of the United States Navy; (237) United States Public Health Service (PHS); Surgeon General of the United States; (238) Office of the Surgeon General (OSG): (239) United States Navy Bureau of Naval Personnel (BUPERS); (240) United States Naval Academy (USNA); (241) Naval Postgraduate School (NPS); (242) Navy Occupational Safety & Health; (243) Naval Strike and Air Warfare Center (NSAWC); (244) United

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

States Naval Observatory (USNO); (245) United States Naval Observatory Flagstaff Station; (246) Officer Candidate School (United States Navy); (247) Naval Reserve Officers Training Corps (NROTC); (248) All False Claim Defendant's EPCD's/wireless subscribers with account names of commissioned ships of the U.S. Navy which are prefixed with the letters "USS", designating "United States Ship"; United States Marine Corps: (249) United States Marine Corps (USMC); (250) Marine Corps Base Camp Pendleton; (251) 1st Marine Division (United States); (252) I Marine Expeditionary Force; (253) 1st Marine Logistics Group; (254) Marine Corps Air Station Yuma or MCAS Yuma (ICAO: KNYL, FAA LID: NYL); (255) Marine Corps Air Ground Combat Center Twentynine Palms, Twentynine Palms, California; (256) Marine Corps Logistics Base Barstow; Barstow, CA; (257) Marine Corps Recruit Depot San Diego; (258) Mountain Warfare Training Center, Bridgeport, California; (259) Marine Corps Logistics Base Albany, Albany, Georgia; (260) Marine Corps Base Hawaii, Kāne'ohe Bay, Hawaii; (261) Marine Corps Base Camp Lejeune, Jacksonville, North Carolina; (262) Marine Corps Recruit Depot Parris Island, Beaufort, South Carolina; (263) Marine Corps Base Quantico, Quantico, Virginia; (264) Henderson Hall, Arlington, Virginia; (265) Marine Barracks, Washington, D.C.; Washington, D.C.; (266) Blount Island Command, Marine Corps Logistics Base Albany, Jacksonville, Florida; (267) Camp H. M. Smith, Marine Corps Base Hawaii; (268) Camp Geiger, Marine Corps Base Camp Lejeune, Jacksonville, North Carolina; (269) Camp Gilbert H. Johnson, Marine Corps Base Camp Lejeune, formerly known as "Montford Point", (Jacksonville, North Carolina; (270) Courthouse Bay, Marine Corps Base Camp Lejeune, Jacksonville, North Carolina; (271) Stone Bay, Marine Corps Base Camp Lejeune, Jacksonville, North Carolina; (272) Camp Allen, Naval Station Norfolk formerly known *as* "Camp Elmore", Norfolk, Virginia; (273) Marine Corps Intelligence Activity (MCIA); (274) Defense Intelligence Agency (DIA); (275) United States Intelligence Community (IC); (276) Office of Naval Intelligence (ONI); (277) Central Intelligence Agency (CIA); (278) Defense Intelligence Agency (DIA); (279) National Security Agency (NSA); (273) National Geospatial-Intelligence Agency (NGA); (280) National Reconnaissance Office (NRO); (281) Air Force Intelligence, Surveillance and Reconnaissance Agency (AFISRA); (282) Army Intelligence and Security Command (INSCOM); (283) United States Department of Energy (DOE); (284) United States Department of Energy national laboratories; (285) Lawrence Berkeley National Laboratory* at Berkeley, California ; (286) Los Alamos National Laboratory* at Los Alamos, New Mexico; (287) Oak Ridge National Laboratory* at Oak Ridge, Tennessee;

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

(282) Argonne National Laboratory* at DuPage County, Illinois; (288) Ames Laboratory* at Ames, Iowa; (289) Brookhaven National Laboratory* at Upton, New York; (290) Sandia National Laboratories* at Albuquerque, New Mexico; (291) Sandia National Laboratories Livermore, California; (292) Idaho National Laboratory* between Arco and Idaho Falls, Idaho; (293) Princeton Plasma Physics Laboratory* at Princeton, New Jersey; (294) Lawrence Livermore National Laboratory, Livermore, California; (295) Savannah River National Laboratory, Aiken, South Carolina; (296) SLAC National Accelerator Laboratory* at Menlo Park, California; (297) Pacific Northwest National Laboratory, Richland, Washington; (298) Fermi National Accelerator Laboratory, Batavia, Illinois;(299) National Renewable Energy Laboratory, Golden, Colorado; (300) Thomas Jefferson National Accelerator Facility, Newport News, Virginia; (301) National Energy Technology Laboratory, Albany, Oregon; Fairbanks, Alaska; Morgantown, West Virginia; Pittsburgh, Pennsylvania; and Sugar Land, Texas; (302) New Brunswick Laboratory, Argonne National Laboratory; (303) Oak Ridge Institute for Science and Education, Oak Ridge, Tennessee; (304) Radiological and Environmental Sciences Laboratory; (305) Savannah River Ecology Laboratory Aiken, South Carolina.; (306) Brookhaven National Laboratory (BNL), Upton, New York on Long Island; (307) The Advanced Light Source (ALS), Berkeley, California; (308) Advanced Photon Source (APS) at Argonne National Laboratory (Argonne, IL, USA); (309) MIT Plasma Science and Fusion Center; (310) Center for Nanophase Materials Sciences (CNMS, Oak Ridge, Tennessee; (310) Center for Functional Nanomaterials (CFN) at Brookhaven National Laboratory; (311) Center for Nanoscale Materials in Lemont, Illinois; (312) Thomas Jefferson National Accelerator Facility (TJNAF), commonly called Jefferson Lab or JLab, is in Newport News, Virginia; (313) EMSL or the William R. Wiley Environmental Molecular Sciences Laboratory, Pacific Northwest National Laboratory in Richland, Wash; (314) U.S. Department of Energy (DOE) Joint Genome Institute (JGI), Walnut Creek, California; (315) Los Alamos Neutron Science Center (LANSCE), formerly known as the Los Alamos Meson Physics Facility (LAMPF) Los Alamos, New Mexico; (316) LAC National Accelerator Laboratory, originally named Stanford Linear Accelerator Center, a United States Department of Energy National Laboratory in Palo Alto, CA; (317) Molecular Foundry located at the Lawrence Berkeley National Laboratory in Berkeley, California; (318) National Center for Electron Microscopy (NCEM) is a U.S. Department of Energy Berkeley, California; (319) National High Magnetic Field Laboratory (NHMFL) Tallahassee, Florida; (320) National Energy Research Scientific Computing Center,

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94106
L: (415) 421-2800
X: (415) 421-2830

or NERSC, Lawrence Berkeley National Laboratory; (321) National Ignition Facility, or NIF, Livermore, California; (321) National Spherical Torus Experiment (NSTX) Oak Ridge National Laboratory; (322) Relativistic Heavy Ion Collider (RHIC) Upton, New York; (323) Synchrotron Radiation Center (SRC), Stoughton, Wisconsin; (324)Stanford Synchrotron Radiation Lightsource Palo Alto, CA; (325) Triangle Universities Nuclear Laboratory, (TUNL), (326) Albany Research Center; (327) Bannister Federal Complex, Kansas City, Missouri; (328) Bettis Atomic Power Laboratory, West Mifflin, Pennsylvania; (329) National Nuclear Security Administration (NNSA); (330) Knolls Atomic Power Laboratory (KAPL); (331) National Petroleum Technology Office; (332) Nevada National Security Site (N2S2), previously the Nevada Test Site (NTS), Southeastern Nye County, Nevada; (333) New Brunswick Laboratory (NBL), New Brunswick, New Jersey; (334) Pantex, Amarillo, in Carson County, Texas; (335) Radiological and Environmental Sciences Laboratory (RESL) Idaho National Laboratory near Idaho Falls, Idaho; (336) Y-12 National Security Complex, Oak Ridge, Tennessee; (337) Yucca Mountain Nuclear Waste Repository as designated by the NWPA Nevada Test Site in Nye County, Nevada; (338) Office of Intelligence and Counterintelligence; (339) United States Department of Homeland Security; (340) Transportation Security Administration (TSA); (341) U.S. Customs and Border Protection (CBP); (342) Office of Field Operations (OFO) within the U.S. Customs and Border Protection (CBP); (343) United States Border Patrol (USBP) within the U.S. Customs and Border Protection (CBP); (344) United States Border Patrol interior checkpoints California: (345) San Clemente - located 7 miles south of San Clemente on Interstate 5; (346) Temecula - located 24 miles north of Escondido on Interstate 15.; (347) I-8 West - located 3 miles east of Pine Valley on Interstate 8; (348) Highway 94 - located 24 miles east of San Diego on California State Route 94; (336) Highway 78/86 - located just south of the intersection of California State Routes 78 and 86 on northbound side; (349) Highway 111 - located between Niland and Bombay Beach; (350) United States Border Patrol interior checkpoints Arizona: (351) I-8 East - located 15 miles east of Yuma on Interstate 8; (352) I-19 heading North from Nogales, just north of Tubac; (353) -10 Heading West from Phoenix, just east of Blythe, California; (341) AZ Hwy 90 heading north from Whetstone to Benson; (354) AZ Hwy 80 heading north from Tombstone to Benson (at junction with AZ 82 west); (355) New Mexico Checkpoints: (356) I-10 West - located 22 miles west of Las Cruces on Interstate 10; (357) Truth or Consequences - located 11 miles south of Truth or Consequences on Interstate 25; (358) US 70 East - located 50 miles east of Las Cruces on U.S. Route 70; (359) Alamogordo - located 30

THE
ƆOLAN
LAW
FIRM
TRIAL LAWYERS
4E ƆOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

COMPLAINT

miles south of Alamogordo on US Route 54; (360) NM Hwy 11 Deming - located 20 miles south of Deming on NM Hwy 11 between mile marker 12 and 13; (361) Texas Checkpoints: (362) Sierra Blanca - located 5 miles west of Sierra Blanca on Interstate 10; (363) Eagle Pass - located 11 miles east of Eagle Pass on U.S. Route 57; (364) Eagle Pass/Carrizo Springs - located 30 miles West Southwest of Eagle Pass, Texas on U.S. Route 277; (365) Bracketville/Uvalde - located 60 miles east of Del Rio, Texas on Highway 90; (366) Laredo - located 29 miles north of Laredo on Interstate 35;(355) Laredo 83 - located 35 miles north of Laredo on Highway 83; (367) Freer - located 16 miles west of Freer on U.S. Route 59; (368) Oilton - located 6 miles east of Oilton on Highway 359; (369) Falfurias - located 14 miles south of Falfurrias on U.S. Highway 281; Sarita - located 14 miles south of Sarita on U.S. Route 77; (370) Hebbronville - located 1 mile south of Hebbronville on TX 16 S; (371) Hebbronville - located 50 yards south on FM 1017 at "T" intersection of Highway 285; (372) Alpine - located 10 miles south of Alpine on Texas State Highway 118, Brownsville - located on Boca Chica highway leading to Boca Chica Beach; (373) Marfa - located 4.5 miles south of Marfa on U.S. Route 67; (374) United States Border Patrol (USBP) – El Paso Sector's Operation; (375) United States Border Patrol (USBP) – San Diego Sector's Operation; (376) United States Border Patrol (USBP) – Tucson Sector's Operation; (377) United States Border Patrol (USBP) – Northern Border Operations; (378) BORTAC, tactical/special response arm of the United States Border Patrol; (379) Border Patrol Search, Trauma, and Rescue Unit (BORSTAR) of the United States Border Patrol; (380) Air Mobile Unit (SDC/SOG/AMU) of the United States Border Patrol; (381) Mobile Response Team (MRT) of the United States Border Patrol; (382) Border Patrol Sectors: (383) Blaine Sector (Western Washington, Oregon, and Alaska.) - stations; Bellingham, Blaine, Port Angeles, Sumas; Spokane Sector (Eastern Washington State, Idaho and Western Montana); (384) -stations: Oroville, WA; Curlew, WA; Colville, WA; Metaline Falls, WA; Bonners Ferry, ID; Eureka, MT; Whitefish, MT' (385) Havre Sector Eastern (Montana); (386) Grand Forks Sector (North Dakota) Stations; Duluth MN, Grand Forks ND, Grand Marais, International Falls, Pembina ND, Portel, Warroad.. Detroit Sector (Selfridge Air National Guard Base, Michigan) - stations; (387) Downtown Detroit, Marysville, Gibralter, Sault Sainte Marie, Sandusky Bay; (388) Buffalo Sector (New York) - stations; Buffalo, NY, Erie, PA, Niagara Falls, Oswego, Rochester, Wellesley Island; (389) Swanton Sector (Vermont); (390) Houlton Sector (Maine); Southern Border: (391) San Diego Sector, stations; Imperial Beach, Chula Vista, Brown Field, El Cajon, Campo, Boulevard sub-station, Temecula, and San Clemente (San Diego County,

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

California); (392) El Centro Sector, stations; El Centro, Calexico, (Imperial County, California) Indio, and Riverside (Riverside County, California); (393) Yuma Sector (Western Arizona) - stations; Wellton, Yuma, Blythe; (394) Tucson Sector (Eastern Arizona)Stations; Ajo, Casa Grande, Tucson, Nogales, Sonoita, Naco, Willcox, and Douglas; (395) El Paso Sector (El Paso County, Texas and New Mexico) - stations; El Paso, Fabens (Clint), Fort Hancock, Ysleta, Alamogordo, Albuquerque, Deming, Las Cruces, Lordsburg, Santa Teresa, Truth or Consequences; (396) Marfa Sector (Big Bend Area of West Texas) - stations; Alpine, Amarillo, Big Bend, Fort Stockton, Lubbock, Marfa, Midland, Pecos, Presidio, Sanderson, Sierra Blanca, Van Horn; (397) Del Rio Sector (Del Rio, Texas) - stations; Abilene, Brackettville, Carrizo Springs, Comstock, Del Rio, Eagle Pass North, Eagle Pass South, Rocksprings, San Angelo, Uvalde; (398) Rio Grande Valley Sector (South Texas) - stations; Brownsville, Corpus Christi, Falfurrias, Fort Brown, Harlingen, Kingsville, McAllen, Rio Grande City, Weslaco; (399) Laredo Sector (South Texas) - stations; Cotulla, Dallas, Freer, Hebbronville, Laredo North, Laredo South, Laredo West, San Antonio, Zapata; (400) New Orleans Sector (Louisiana, Mississippi, Alabama, and West Florida); (401) Miami Sector (Florida East and South); (402) Caribbean - Ramey Sector (Aguadilla, Puerto Rico) and the Virgin Islands; (403) Federal Law Enforcement Training Center (FLETC) Brunswick, Georgia; Department of Agriculture (USDA); (404) Office of Inspector General (USDAOIG); (405) United States Forest Service (USFS); (406) U.S. Forest Service Law Enforcement and Investigations (USFSLEI); Department of Commerce: (407) Bureau of Industry and Security (BIS); (408) Office of Export Enforcement (OEE); (409) National Institute of Standards and Technology (NIST); (410) National Institute of Standards and Technology Police (NIST Police); (411) National Oceanic and Atmospheric Administration (NOAA); (412) National Marine Fisheries Service (NMFS); (413) National Oceanic and Atmospheric Administration Fisheries Office for Law Enforcement (OLE); (414) Department of Commerce Office of Security (DOCOS); (415) Department of Commerce Office of Inspector General (DOCOIG); Department of Defense: (416) Office of Inspector General (DODOIG); (417) Defense Criminal Investigative Service (DCIS); (418) Pentagon Force Protection Agency (PFPA); (419) United States Pentagon Police (USPPD); (420) Department of Defense Police; (421) Defense Logistics Agency Police (DLA); (422) National Security Agency Police (NSA); (423) Defense Intelligence Agency Police (DIA); (424) National Geospatial-Intelligence Agency Police (NGA); (425) Special Inspector General for Afghanistan Reconstruction (SIGAR; (426) Special Inspector General for Iraq Reconstruction (SIGIR);

THE
DOLAN 26
LAW 27
FIRM 28
TRIAL LAWYERS
1E DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

Department of Army: (427) Counterintelligence activity (CI), United States Army Intelligence and Security Command; (428) United States Army Criminal Investigation Command (CID); (429) United States Army Military Police Corps; (430) Department of the Army Police; (431) United States Army Corrections Command; Department of Navy: (432) Naval Criminal Investigative Service (NCIS); (433) United States Marine Corps Criminal Investigation Division (MC CID); (434) Department of the Navy Police (civilian police); (435) Marine Corps Provost Marshal's Office (military police); (436) United States Marine Corps Police (civilian police); (437) United States Naval Academy Police (civilian police); (438) Master-at-Arms (U.S. Navy military police); Department of the Air Force: (439) Air Force Office of Special Investigations (AFOSI); (440) Air Force Security Forces Center (AFSFC); (441) Department of the Air Force Police; Department of Education: (442) Office of the Inspector General (EDOIG); Department of Energy (DOE): (443) Office of Inspector General (DOEOIG); (444) Office of Health, Safety and Security (DOEHSS); (445) Office of Secure Transportation (OST); Department of Health and Human Services: (446) United States Food and Drug and Administration (HHSFDA); (447) Office of Criminal Investigations (OCI); (448) National Institutes of Health (NIH); (449) National Institutes of Health Police (NIH Police); Department of Homeland Security (DHS): (450) Federal Law Enforcement Training Center (FLETC); (451) United States Citizenship and Immigration Services (USCIS); (452) United States Coast Guard (USCG); (453) Coast Guard Investigative Service (CGIS); (454) United States Customs and Border Protection (CBP); (455) Office of Air and Marine (OAM); (456) Office of Border Patrol (OBP); (457) Office of Field Operations (OFO); (458) Federal Protective Service (FPS); (459) United States Immigration and Customs Enforcement (ICE); (460) Enforcement Removal Operations (ERO); (461) Homeland Security Investigations (HSI); (462) Office of Intelligence; (463) Office of Professional Responsibility (OPR); (464) United States Secret Service (USSS); (465) Transportation Security Administration (TSA); (466) Office of Law Enforcement/Federal Air Marshal Service (FAMS); (467) Department of Homeland Security Office of Inspector General (DHSOIG); Department of Housing and Urban Development: (468) Office of Inspector General (HUD/OIG); (469) Protective Service Division (HUDPSD); Department of the Interior (USDI): Bureau of Indian Affairs (BIA); (470) Bureau of Indian Affairs Police (BIA Police); (471) Bureau of Land Management (BLM); (472) Bureau of Land Management Office of Law Enforcement (BLM Rangers and Special Agents); Bureau of Reclamation (BOR): (473) Bureau of Reclamation Office of Law Enforcement (BOR Rangers); (474) Hoover Dam Police aka Bureau

of Reclamation Police; National Park Service (NPS); (475) Division of Law Enforcement, Security and Emergency Services (U.S. Park Rangers-Law Enforcement); United States Park Police: (476) Office of Inspector General (DOIOIG); (477) Office of Surface Mining Reclamation and Enforcement (OSMRE); United States Fish and Wildlife Service (USFW): (478) Office of Law Enforcement; (479) Division of Refuge Law Enforcement: Department of Justice (USDOJ): (480) Bureau of Alcohol, Tobacco, Fi rearms, and Explosives (ATF); (481) United States Drug Enforcement Administration (DEA); Federal Bureau of Investigation (FBI): (482a) Federal Bureau of Investigation Police (FBI Police); (482b) Federal Bureau of Prisons (BOP); (483) Office of Inspector General (DOJIOIG); (484) United States Marshals Service (USMS); Department of Labor: (485) Office of Inspector General (DOLOIG): Department of State: (486) Bureau of Diplomatic Security (DS); (487) U.S. Diplomatic Security Service (DSS); (488) Office of Foreign Missions; (489) Office of the Inspector General of the Department of State; Department of Transportation: (490) Federal Aviation Administration (FAA); (491) Office of Inspector General (DOTOIG); (492) United States Merchant Marine Academy Department of Public Safety (USMMADPS); (493) Office of Odometer Fraud Investigation - NHTSA (OFI);: Department of the Treasury: (494) Alcohol and Tobacco Tax and Trade Bureau; (495) Bureau of Engraving and Printing (BEP); (496) Bureau of Engraving and Printing Police (BEP Police); (497) Financial Crimes Enforcement Network (FINCEN); (498) Internal Revenue Service Criminal Investigation Division (IRS-CI): Office of Inspector General (TREASOIG);(499) Treasury Inspector General for Tax Administration (TIGTA); (490) United States Mint Police (USMP); (491) Special Inspector General for the Troubled Asset Relief Program (SIGTARP): Department of Veterans Affairs: (492) Office of Inspector General (VAOIG); (493) Veterans Affairs Police: Legislative Branch: (493) Library of Congress, Office of Security and Emergency Preparedness (LOC); (494) Sergeant at Arms of the United States House of Representatives; (495) Sergeant at Arms of the United States Senate; (496) United States Capitol Police (USCP); (497) United States Government Printing; (498a) Office Police; (498b) Office of Inspector General, United States Government Printing Office; Judicial Branch: (498c) Marshal of the United States Supreme Court; (498) United States Supreme Court Police; (499) Administrative Office of the United States Courts, Office of Probation and Pretrial Services (AOUSC); Additional Federal Law Enforcement Agencies: (500) Central Intelligence Agency Security Protective Service (CIASPS); (501) United States Environmental Protection Agency; (502) Criminal Investigation Division (EPACID); (503) Office of Inspector

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

General (EPAOIG); (504) National Aeronautics and Space Administration; (505) Office of Inspector General (NASAOIG); (506) NASA Security Services; (507) Nuclear Regulatory Commission, Office of Inspector General (NRCOIG); (508) Office of Personnel Management, Office of Inspector General (OPMOIG); (509) Railroad Retirement Board, Office of Inspector General (RRBOIG); (510) Small Business Administration, Office of Inspector General (SBAOIG); (511) Federal Deposit Insurance Corporation, Office of Inspector General (FDICOIG); (512) General Services Administration, Office of Inspector General (GSAOIG); (513) Social Security Administration Office of Inspector General (SSAOIG); (514) United States Postal Service (USPS); (515) USPS Office of Inspector General (USPSOIG); (516) United States Postal Inspection Service (USPIS); (517) (U.S. Postal Police; (518) Smithsonian Institution: (519) Office of Protection Services (SI); (520) National Zoological Park Police (NZPP); (521) Office of the Inspector General (OIG); (522) Amtrak; (523) Amtrak Office of Inspector General' (524) Amtrak Office of Security Strategy and Special Operations (OSSSO); (525) Amtrak Police; (526) Federal Reserve Bank: Federal Reserve Police; (527) Tennessee Valley Authority; (528) Tennessee Valley Authority Office of Inspector General (TVAOIG); (529) Tennessee Valley Authority Police (TVAP) defunct - disbanded June 2012; (530) United States Agency for International Development, Office of Inspector General (AIDOIG); (531) U.S. Immigration and Customs Enforcement (ICE); (532) U.S. Immigration and Customs Enforcement (ICE) – Director; (533) Deputy Director; (534) Enforcement and Removal Operations Directorate; (535) Removal Division; (536) Removal Division; (537) Secure Communities and Enforcement Division; (538) Immigration Health Services Division; (539) Mission Support Division; Detention Management Division; (540) Local Field Offices; (541) Homeland Security Investigations Directorate; (542) Domestic Operations Division; (543) Intelligence Division; (544) Office of International Affairs; (545) Mission Support Division; (546) National Intellectual Property Rights Coordination Center; (547) National Security Investigations Division; (548) Management and Administration; (549) NASA Earth Science, formerly called the NASA Earth Science Enterprise (ESE); (550) Defense Counterintelligence and Human Intelligence Center (DCHC); (551) United States Coast Guard (USCG); (552) Coast; Guard, the National Response Center (NRC); (553) U.S. Coast Guard Sector Command Center (SCC); USCG Atlantic Area: (554) USCG District One Sector Northern New England (South Portland, Maine); (555) USCG Sector Boston (Boston, Massachusetts); (556) USCG Sector Southeast New England (Woods Hole, Massachusetts); (557) USCG Sector Long Island Sound (New Haven, Connecticut); (558) USCG Sector New York (Staten

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

Island, New York); USCG District Five: (559) USCG Sector Delaware Bay (Philadelphia, Pennsylvania); (560) USCG Sector Baltimore (Baltimore, Maryland); (561) USCG Sector Hampton Roads (Portsmouth, Virginia); (562) USCG Sector North Carolina (Atlantic Beach, North Carolina); USCG District 7: (563) USCG Sector Charleston (Charleston, South Carolina); (564) USCG Sector Jacksonville (Jacksonville, Florida); (565) USCG Sector Miami (Miami, Florida); (566) USCG Sector Key West (Key West, Florida); (567) USCG Sector St. Petersburg (St. Petersburg, Florida); (568) USCG Sector Key West (Key West, Florida); (569) USCG Sector San Juan (San Juan, Puerto Rico); USCG District 8: (570) USCG Sector Ohio Valley (Louisville, Kentucky); (571) USCG Sector Upper Mississippi (St. Louis, Missouri); (572) USCG Sector Lower Mississippi (Memphis, Tennessee); (573) USCG Sector Mobile (Mobile, Alabama); (574) USCG Sector New Orleans (New Orleans, Louisiana); (575) USCG Sector Houston-Galveston (Houston, Texas); (576) USCG Sector Corpus Christi (Corpus Christi, Texas); USCG District 9: (577) USCG Sector Buffalo (Buffalo, New York); (578) USCG Sector Detroit (Detroit, Michigan); (579) USCG Sector Lake Michigan (Milwaukee, Wisconsin); (580) USCG Sector Sault Ste. Marie (Sault Ste. Marie, Michigan); USCG Pacific Area: USCG District 11: (581) USCG Sector San Francisco (San Francisco, California); (582) USCG Sector Humboldt Bay (McKinleyville, California); (583) USCG Sector Los Angeles - Long Beach (San Pedro, California); (584) USCG Sector San Diego (San Diego, California);

USCG District 13: (585) USCG Sector Puget Sound (Seattle, Washington); (586) USCG Sector Columbia River (Astoria, Oregon); USCG District 14 (587) USCG Sector Honolulu (Honolulu, Hawaii); (588) USCG Sector Guam (Guam); (589) USCG Sector Guam (Guam); USCG District 17(590) USCG Sector Anchorage (Anchorage, Alaska); (591) USCG Sector Juneau (Juneau, Alaska); (592) Federal Emergency Management Agency (FEMA); (593) FEMA Region I: CT, ME, MA, NH, RI, VT; (594) FEMA Region III: Philadelphia, PA;(595) FEMA Region II: NJ, NY, PR, VI; ;(596) FEMA Region IV: AL, FL, GA, KY, MS, NC, SC, TN; (597) FEMA Region V: IL, IN, MI, MN, OH, WI; (598) FEMA Region V: IL, IN, MI, MN, OH, WI; (598) Region VI: Denton, TX; (599) Region VII: Kansas City, MO; (600) Region VIII: Denver, CO; (601) Region IX Oakland, CA; (602) Region X, Bothell, WA; (602) Region XI, Pacific Area Office (PAO), Honolulu, HI; (603) FEMA National Response Coordination Center(NRCC); (604) FEMA Urban Search and Rescue (US&R); (605) FEMA's Mobile Emergency Response Support (MERS); (606) Mobile Air Transportable Telecommunications System (MATTS); (607) National Emergency Technology Guard; (608) National Disaster Medical System (NDMS); (609) FEMA Corps; (610) United States

Secret Service HQ in Washington, D.C.; (611) Nationwide network of Electronic Crimes Task Forces (ECTFs) in the following locations: (612) ECTF Atlanta; (613) ECTF Baltimore; (614) ECTF Birmingham; (615) ECTF Boston; (616) ECTF Buffalo; (617) ECTF Charlotte; (618) ECTF Chicago; (619) ECTF Cleveland; (620) ECTF Columbia; (621) ECTF Dallas; (622) ECTF Houston; (623) ECTF Kansas City; (624) ECTF Las Vegas; (625) ECTF Los Angeles; (626) ECTF Louisville; (627) ECTF Memphis; (628) ECTF Miami; (629) ECTF Minneapolis; (630) ECTF New Orleans; (631) ECTF New York/New Jersey; (632) ECTF Oklahoma City; (633) ECTF Orlando; (634) ECTF Philadelphia; (635) Pittsburgh; (636) ECTF San Francisco; (637) ECTF Seattle; (638) ECTF St. Louis; (639) ECTF Washington, D.C.; (640) 136 United States Secret Services Field Offices (USSSFO) located at the following locations: (641) Brazil(Brasilia); (642) Bulgaria (Sofia); (643) Montreal; (644) Ottawa; (645) Toronto; (646) Vancouver; (647) Colombia (Bogota); (648) China (Hong Kong); (649) France (Paris); (650) INTERPOL (Lyon); (651) , Germany (Frankfurt); (652) , Italy (Rome); (653) Mexico (Mexico City); (654) EUROPOL (Netherlands/The Hague); (655) , Romania (Bucharest); (656) Russia (Moscow); (657) South Africa (Pretoria); (658) Spain (Madrid); 659) Thailand (Bangkok); (660) and the United Kingdom(London); (661) U.S. Diplomatic Security Service (DSS); (662) Federal Protective Service (FPS) of the National Protection and Programs Directorate of the Department of Homeland Security; (663) United States Marshals Service (USMS) within the U.S. Department of Justice; (664) Director of the U.S. Marshals Service; (665) Deputy Director of the U.S. Marshals Service; (666) USMS Equal Employment Opportunity (EEO); (667) USMS Office of Public Affairs (OPA); (668) USMS Office of Congressional Affairs (OCA); (669) USMS Office of Internal Communications (OIC); (670) USMS Office of General Counsel (OGC); (671) USMS Office of Inspection (OI); (672) USMS Administration Directorate (ADA); (673) USMS Training Division (TD); (674) USMS Human Resources Division (HRD); (675) USMS Information Technology Division (ITD); (677) USMS Management Support Division (MSD); (678) USMS Financial Services Division (FSD); (679) USMS Asset Forfeiture Division (AFD); (680) USMS Operations Directorate (ADO); (681) USMS Judicial Security Division (JSD); (682) USMS Investigative Operations Division (IOD); (683) USMS Witness Security Division (WSD); (684) USMS Justice Prisoner and Alien Transportation System (JPATS); (685) USMS Tactical Operations Division (TOD); (686) USMS Special Operations Group (SOG); (687) USMS Prisoner Operations Division (POD); (688) National Protection and Programs Directorate (NPPD); (689) Science and Technology Directorate (S&T) is a

department within the United States Department of Homeland Security; (690) Office of Health Affairs (OHA) is a department within the United States Department of Homeland Security; (691) Office of Intelligence and Analysis (I&A) is an agency of the United States Department of Homeland Security; (692) Office of Operations Coordination and Planning (OPS) is a department of the headquarters of the United States Department of Homeland Security; (693) Domestic Nuclear Detection Office (DNDO); (701) Federal Law Enforcement Training Center (FLETC); (695) ATF Acquisition and Property Management Division; (696) Department of Defense, Offices, Boards and Divisions; (697) Bureau of Public Debt (698); (699); Financial Crime Enforcement Network; (700) Peace Corps; (701) Cooperation Agency;

(hereinafter collectively, **"The 701+ Federal Government Agencies/Departments"**).

18.     QUI TAM PLAINTIFF was provided billing, subscriber usage data from FALSE CLAIMS DEFENDANTS.  In addition, QUI TAM PLAINTIFF based upon information and documents obtained by Mr. Knudsen pursuant to the State of California Public Records Act requests and in other ways, alleges, on information and belief, that all of **the 701+ Federal Government Agencies/Departments'** (listed above), Mr. Knudsen determined the estimated average monthly costs (monthly agency spend) for **the 701+ Federal Government Agencies/Departments'** 2012 Annual Period with FALSE CLAIMS DEFENDANTS are as follows:

| | | |
|---|---|---|
| a. | Total Monthly Costs | $19,887,071 |
| b. | Total Monthly Line Count: | 633,548 |
| c. | Total Number of Monthly Invoices: | 7,701 |
| d. | Total Monthly Spend / Cost Per Line: | $31.39 |
| e. | Total Monthly City/County User Taxes Charged: | $1,058,024 |

19.     On or about April 6, 2001, the U.S. General Services Administration awarded under the (GSA) cooperative purchasing program for Federal, State and Local entities an Information Technology Schedule Pricelist General Purpose Commercial Information Technology Equipment, Software and Services, Contract Number GS-35F-0329L, herein collectively **referred to as the**

COMPLAINT

**"GSA Contract"** (with Pricelist current through Modification #PA0076, dated August 8, 2003) to Sprint Communications Company, L.P. [3] for the following Special Item Numbers (No(s)):

20.      Special Item No. 132-8 Purchase of Equipment

21.      Special Item No. 132-12 Maintenance, Repair Service and Repair Parts/Spare Parts

22.      Special Item No. 132-33 Perpetual Software Licenses

23.      Special Item No. 132-34 Maintenance of Software

24.      Special Item No. 132-51 Information Technology Professional Services

25.      Special Item No. 132-52 Electronic Commerce Services

26.      Special Item No. 132-53 Wireless Services

QUI TAM PLAINTIFF incorporates as **Exhibit "C"** a true and correct copy of the Contract Number GS-35F-0329L (with Pricelist current through Modification #PA0076, dated August 8, 2003).

27.      On or around December 19, 2008, the GSA contract was amended to cover the period from April 6, 2001 through April 6, 2011 with pricelist current through Modification PA-0156, dated December 19, 2008. QUI TAM PLAINTIFF incorporates as **Exhibit "D"** a true and correct copy of the GSA Contract Number GS-35F-0329L (with Pricelist current through Modification #PA0156, dated August 8, 2003).

28.      On or around December 19, 2008, the GSA contract was amended to cover the period from April 6, 2001 through April 5, 2016 with pricelist current through Modification PA-0213, dated July 1, 2013. QUI TAM PLAINTIFF incorporates as **Exhibit "E"** a true and correct copy of the GSA Contract Number GS-35F-0329L (with Pricelist current through Modification #PA0213, dated July 1, 2013).

29.      FALSE CLAIMS DEFENDANTS agreed in their GSA Contract (see Federal Acquisition Regulation Subpart 9.602[4]) to provide best value solutions when responding to an ordering activity

---

[3] Sprint Communications Company, L.P. 13221 Woodland Park Road, Herndon, VA 20171 www.sprintbiz.com/gsd
[4] 9.602 General.

    (a) Contractor team arrangements may be desirable from both a Government and industry standpoint in order to enable the companies involved to—
        (1) Complement each other's unique capabilities; and
        **(2) Offer the Government the best combination of performance, cost, and delivery for the system or product being acquired.**
    (b) Contractor team arrangements may be particularly appropriate in complex research and development acquisitions, but may be used in other appropriate acquisitions, including production.
    (c) The companies involved normally form a contractor team arrangement before submitting an offer. However, they may enter into an arrangement later in the acquisition process, including after contract award.

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
1E DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

and to offer the Government the best combination of performance, cost, and delivery for the system or product being acquired.

30.    In addition, FALSE CLAIMS DEFENDANTS agreed to Review Blank Purchase Agreements (BPAs) periodically. According to FALSE CLAIMS DEFENDANT'S **Exhibit "D"**, page 27, item 4. B(ii)) such FALSE CLAIM DEFENDANT'S reviews shall be conducted at least annually. The purpose of the review is to determine whether the FALSE CLAIM DEFENDANT'S BPA still represents the best value (considering price, special qualifications, etc.) and results in the lowest overall cost alternative to meet the ordering activity's needs).

31.    QUI TAM PLAINTIFF asserts as an example of a BPA was an order on or around April 1, 2009 for FALSE CLAIM DEFENDANT'S Supplies and/or Services ("**Exhibit E**") from the U.S. Department of Commerce.  The Blanket Purchase Agreement (BPA) is to provide wireless communication services and equipment to all Bureaus within the Department of Commerce.  The term of this BPA shall be from April 1, 2009 through March 31, 2014, unless sooner terminated. BPA calls may be placed by any duly authorized Contracting Officer of the following Bureaus of the Department of Commerce: (1) Bureau of Industry and Security; (2) Economics and Statistics Administration; (3) Bureau of the Census; (4) Bureau of Economic Analysis; (5) Economic Development Administration; (6) International Trade Administration; (7) Minority Business Development Agency; (8) National Institute of Standards and Technology; (9) National Oceanic and Atmospheric Administration; (10) National Technical Information Service; (11) National Telecommunication and Information Administration; (12) Patent and Trademark Office.

32.    FALSE CLAIM DEFENDANTS agreed[5] in the BPA with the Department of Commerce to provide: (1) reduce communication expenses for individual cellular accounts[6], (2) provide basic voice mail at no cost (free)[7], (3) provide detailed billing information for each individual call associate(d) to the BPA,[8] (4) administrative resources supporting service provisioning (new implementation and service transitions) and continuing service support for cost operation, account

---

[5] Signatures are in Exhibit E, Attachment A, page 8 of 9.
[6] Exhibit E, Section 1.4, second bullet, page 5 of 9.
[7] Exhibit E, Section 1.5, page 5 of 9.
[8] Exhibit E, Section 2.1.3, page 6 of 9.

COMPLAINT

THE
DOLAN LAW FIRM
TRIAL LAWYERS
E DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

consolidation, problem resolution and billing issues[9], (5) with the Most Favored (MF) Superior (voice, data and text messaging) Rate Plans and Features[10], (6) to place voice lines on a PDA/Smartphone and Blackberry Service Plans (including $0.00 Monthly Recurring Charge (MRC) Voice Flat Rates)[11], (7) provide (quarterly) rate plan (optimization reports) analysis to ensure each (voice, data and text messaging) line was put on the lowest cost appropriate plan[12], (8) provide additional accounts, subaccounts and breakdown by device reports[13] (9) provide activation market incentives, such as upgraded phone handsets (wireless communication technology refresh plan[14]), (10) monitor and manage zero (voice and data) usage lines to suspend, disconnect or place on low cost consumption rate plans[15] and (11) provide FALSE CLAIMS DEFENDANTS' reporting and analysis / and support services to accomplish monthly bill consolidation and reporting - a critical first step to achieve monthly telecom expense savings QUI TAM PLAINTIFF believes and upon such information provided by FASLE CLAIMS DEFENDANT

33. Commitments, Warranties and Representations of GSA Contract[16], Item 18, page 9. For the purpose of the GSA Contract, FALSE CLAIM DEFENDANTS represented commitments, warranties and representations include, in addition to those agreed to for the entire schedule contract the following: (1) Technical representations and/or warranties of products concerning performance, total system performance and/or <u>configuration,</u> physical, design and/or functional characteristics and capabilities of a product/equipment/ service/software package submitted in response to requirements which result in orders under this schedule contract.

---

[9] Dept. of Commerce, BPA, Exhibit E, Section 2.2.1, page 6 of 9.
[10] Department of Commerce Attachment A – Sprint Spectrum, L.P. (GS-35F-0329L) Best Value – Blanket Purchase Agreement.
[11] Dept. of Commerce BPA, Exhibit E, Section 3.0, second bullet, page 6 of 9.
[12] Department of Commerce Additional Contract Terms and Conditions, item 3c Reporting Requirements: last bullet (page 7 of 9). "Rate plan analysis is an evaluation within an account of the optimal configuration of rate plans (i.e., number of voice minutes, shared or unshared) that should be used to keep costs to a minimum.
[13] Dept. of Commerce, BPA, Exhibit E, Section 3 item c. page 7 of 9. FALSE CLAIM DEFENDANTS agreed to provide each of the Government's fiscal year quarters and are due by the 15th day of the month following the end of each quarter reports shall contain the following information: (1) list of subaccounts under the BPA master account; (2) breakdown of devices ordered; (3) total voice charges for the period; (4) total data charges for the period; (5) geographic breakdown of users; (6) minutes of use for the period; (7) direct-connect minutes of use for the period; (8) overage charge summary; (9) rate plan analysis.
[14] Dept. of Commerce BPA, Exhibit E, Section 2.14, page 6 of 9.
[15] Dept. of Commerce BPA, Exhibit E, Section 2.2.1, page 6 of 9: Administrative resources supporting service provisioning and continuing support for cost optimization, account consolidation, problem resolution and billing issues.
[16] Exhibit D_0M1T95.2OJK8U_GS-35F-0329L_SPRINTGS35F0329LPO0213_Effective 2001-2016.

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
4E DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

34.     In addition, FALSE CLAIM DEFENDANTS represented (GSA Contract, Item 18 (3), page 12) Any representations and/or warranties concerning the products made in ANY (emphasis added) FALSE CLAIM DEFENDANT'S literature, description, drawings and/or specifications furnished by the Contractor (FALSE CLAIMS DEFENDANT).

35.     QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges that using FALSE CLAIMS DEFENDANT's Commitments, Warranties and Representations, FALSE CLAIM DEFENDANTS were providing most favored nation and best value commitments, pricing, provisions, service level commitments, warranties and representations.

36.     An example of FALSE CLAIMS DEFENDANT's commitments, representations and/or warranties of products including technical representations and/or warranties of products concerning performance, total system performance and/or configuration, physical, design and/or functional characteristics and capabilities of product/equipment/service/software package submitted in response to requirements which result in orders under the GSA Contract was the following.

37.     On or about June 6, 2005, the State of California has requested proposals for cellular service contracts. The State of California wanted to form a Group Purchasing Agreement (California Wireless Contract) for the various government agencies (in California). This was known as Proposal eRFP 5014. This proposal was sent to Sprint, Verizon, AT&T, and T-Mobile. The CITY purchased off of this agreement by and through a Master Agreement, IS-05-58-01 and all Amendments with FALSE CLAIMS DEFENDANTS ("hereinafter CWC Contract"), that referenced and incorporated the terms of Proposal eRFP 5014. The CWC Contract was renewed on 10/27/06 to 6/30/11. The CITY of Los Angeles incorporated the pricing terms and conditions of the CWC Contract and the State's 2005 Proposal eRFP 5014. (QUI TAM PLAINTIFF incorporates as **Exhibit "F"** a true and correct copy of the State's 2005 Proposal eRFP 5014 and CWC Carrier Comparisons **("Exhibit G".)** In the CWC Contract, the FALSE CLAIMS DEFENDANTS agreed to do the following acts: (1) provide the STATE and participating entities (i.e. CITY OF LOS ANGELES; (Exhibit A, City of Los Angeles Compliance Report - Verizon WirelessDFCR-0023 V.1.6.) with the Most Favored (MF) Superior (voice, data and text messaging) Rate Plans and Features, (2) to place STATE and participating entities' voice lines on a $0.00 Monthly Recurring Charge (MRC) Voice Flat Rates, (3) provide quarterly Rate Plan Optimization to ensure each (voice, data and text messaging) line was put on the lowest cost appropriate plan, (4) provide activation market incentives, such as upgraded phone handsets from 2005 to 2011, (5) monitor and manage zero (voice and data) usage lines to

suspend, disconnect or place on low cost consumption rate plans and (6) provide FALSE CLAIMS DEFENDANTS' reporting and analysis / and support services to accomplish monthly bill consolidation and reporting - a critical first step to achieve monthly telecom expense savings QUI TAM PLAINTIFF believes and upon such information provided by FASLE CLAIMS DEFENDANT.

38.    According to FALSE CLAIMS DEFENDANT, billing portal(s) was designed to meet all cost accounting and reporting needs in an easy-to-use, accessible format. FALSE CLAIMS DEFENDANT claimed that billing portals would perform many telecom expense management (TEM) functions explained in its responses to RFPs. QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges, FALSE CLAIMS DEFENDANT's billing and reporting portals was the "powerful reporting tool" which complimented FALSE CLAIMS DEFENDANT's advertising tag line: "'**All. Together. Now**".

39.    Another example of FALSE CLAIMS DEFENDANT'S Contractor Commitments, Warranties and Representations was on or around On or around September 1, 2011 through October 31, 2012 the STATE entered in an Agreement with FALSE CLAIMS DEFENDANT to provide Wireless Communications services including equipment agreement effective September 1, 2011 through October 31, 2012 a Cooperative Purchase Arrangement as stated in a Contract between State of California and Verizon Wireless identified as California Participating Addendum Western States Contracting Alliance (WSCA) Master Price Contract #7-10-70-16, Amendment #4 and attachments as reference on page 2. PLAINTIFF incorporates as **Exhibit "E"** a true and correct copy of the WSCA Master Price Contract(s). In addition, this contract incorporated the State of Nevada, Western States Contracting Alliance (WSCA) RFP/Contract #1523 effective date October 10, 2006, Amendment 1 extending the effective date and incorporating Attachments DD &EE, Amendment 2, Amendment #3 effective April 9, 2008, Amendment #4 effective December 16, 2008, Amendment #5 with an effective date October 10, 2006 to October 31, 2011, Amendment #6, effective July 27, 2010.

40.    The STATE, by and through, the Western States Conference Contracting Alliance and Proposal RFP #1523 entered into a further master agreement called Master Agreement #1523. The terms of Master Agreement #1523 incorporated by reference Proposal #1523. PLAINTIFF incorporates as **Exhibits "F & G"**

COMPLAINT

41. On or around October 26, 2006, the FALSE CLAIMS DEFENDANTS promised, represented and agreed in their proposal to the State of Nevada Western States Contracting Alliance Proposal RFP 1523 for wireless equipment and services to provide the lowest cost to the State of California and participating entities (i.e. City of Los Angeles).

42. In the WSCA Contract, the FALSE CLAIMS DEFENDANTS agreed to do the following acts: (1) provide the STATE and participating entities (i.e. City of Los Angeles) with the Most Favored (MF) Superior (voice, data and text messaging) Rate Plans and Features, (2) to place city voice lines on a $0.00 Monthly Recurring Charge (MRC) Voice Flat Rates, (3) provide monthly usage and quarterly Rate Plan Optimization to ensure each line was put on the lowest cost appropriate plan, (4) provide monitoring and management of zero usage lines and (5) provide activation market incentives, such as upgraded phone handsets from 2011 to present.

43. QUI TAM PLAINTIFF based upon information and documents obtained by Mr. Knudsen pursuant to the State of California Public Records Act requests, access to the **Federal Procurement Data System** (FPDS) and in other ways, alleges, on information and belief, that all of **the 701+ Federal Government Agencies/Departments'** (listed above), Mr. Knudsen determined the estimated <u>average</u> monthly costs (monthly agency spend) for the 2012 Annual Period with FALSE CLAIMS DEFENDANTS are as follows:

|   |   |   |
|---|---|---|
| a. | Total Monthly Costs | $19,887,071 |
| b. | Total Monthly Line Count: | 633,548 |
| c. | Total Number of Monthly Invoices: | 7,701 |
| d. | Total Monthly Spend / Cost Per Line: | $31.39 |
| e. | Total Monthly City/County User Taxes Charged: | $1,058,024 |

44. During 2012, as many as **701+ Federal Government Agencies/Departments** departments were paying FALSE CLAIMS DEFENDANTS for the use of an average (est.) 633,548 wireless lines per month.

45. FALSE CLAIMS DEFENDANTS failed to provide the FEDERAL GOVERNMENT with the "best value" benefits of above-mentioned contractual terms represented and committed to other government agencies such as the STATE of CALIFORNIA and City of Los Angeles, and as a result FALSE CLAIMS DEFENDANTS consciously overbilled the **701+ Federal Government**

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

**Agencies/Departments**. FALSE CLAIMS DEFENDANTS violated an estimated 2,242,466 Million) "best value" contract performance obligations to **701+ Federal Government Agencies/Departments**. Throughout the contract, the FALSE CLAIMS DEFENDANTS had an estimated $680,210,485 (34%) of overcharges to the average of **701+ Federal Government Agencies/Departments**. FALSE CLAIMS DEFENDANTS never, over this period of time, provided the benefits of the "most favored pricing and "best value provisions" to the **701+ Federal Government Agencies/Departments**. The FALSE CLAIMS DEFENDANTS submitted at least 797,589 (estimated 98.65%) out of the 808,504 false or erroneous monthly invoices to the **701+ Federal Government Agencies/Departments** since January 2005. FALSE CLAIMS DEFENDANTS' failure to monitor and manage the **701+ Federal Government Agencies/Departments** 10,691,655 (17.4%) zero usage lines instances out of a total 61,446,295 monthly wireless line instances, resulted in the **701+ Federal Government Agencies/Departments** overpaying the FALSE CLAIMS DEFENDANTS throughout the contract.

46.     FALSE CLAIMS DEFENDANTS also made false claims and statements regarding its management of wireless services of the **701+ Federal Government Agencies/Departments** procured corporate (or agency) wireless contract, including corporate/agency responsible wireless lines, by failing to provide the FEDERAL GOVERNMENT one convenient online billing portal tool, to access ALL **701+ Federal Government Agencies/Departments'** "agency liable" subscribers' monthly usage charges and to achieve monthly bill consolidation and reporting FEDERAL GOVERNMENT agency wide.

47.     FALSE CLAIMS DEFENDANT agreed to provide an est. 808,504 total monthly usage Monitoring & Reports and monitoring services throughout the contract for each **701+ Federal Government Agencies/Department's** (including every subaccount/ Billing Account Number (BAN) subscribers).

48.     QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges that FALSE CLAIMS DEFENDANT provided an estimated 320,171 monthly monitoring reports, and missed providing up to an estimated 488,333 monthly subscriber monitoring and usage reports for **701+ Federal Government Agencies/Department's** (and individual Cost Center Account Numbers) throughout the contract.

49.     QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges that using FALSE CLAIMS DEFENDANT's online billing portal (with its masquerade

COMPLAINT

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
HE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

feature) and account management services[17] is the first step to achieve monthly telecom expense savings ranging between 10%-30% with FALSE CLAIMS DEFENDANT.

50.    QUI TAM PLAINTIFF is informed and believes and upon such information and belief also made false claims and statements regarding its management of wireless services of the FEDERAL GOVERNMENT'S procured corporate (or agency) wireless contract, including corporate/agency responsible wireless lines, by failing to provide proper electronic billing data, and charging the CA City and County Wireless Utility Taxes (Exhibit J, 121 CA City and County User Tax Information Summary Listing) when the **701+ Federal Government Agencies/Department's** subscribers are exempt (resulting in an estimated $102,615,313 in over charges on FEDERAL GOVERNMENT'S invoices).

51.    In addition, QUI TAM PLAINTIFF alleges FALSE CLAIM DEFENDANTS charged the **701+ Federal Government Agencies/Departments** the California City and County Wireless Utility Taxes, overall, 23 states and the nation's capital have average state-local wireless taxes and fees in excess of 10%.

52.    QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges Baltimore, Md., imposes a $4 per line per month tax on wireless users. The Charm City assessment is on top of federal and state charges. Furthermore, the Washington, D.C., suburb of Montgomery County, Md., charges cellphone users a monthly $3.50 per line tax. The **701+ Federal Government Agencies/Department's** subscribers are tax exempt from the above local wireless taxes and fees.

53.    QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges FALSE CLAIMS DEFENDANTS had an estimated 89.8% failure rate to provide the STATE with superior Market Rate (plans). This contributed in FALSE CLAIMS DEFENDANT's estimated $680,210,485 in overcharges throughout the contract term (an est. $11.07 recovery per line per month) to the **701+ Federal Government Agencies/Department's** wireless line instances being on plans that did provide the most favored pricing provisions pursuant to the GSA/CWC/WSCA Agreements from January 2005-September 2013.

---

[17] FALSE CLAIMS DEFENDANTS represented administrative and technical features for cellular services under the GSA contract to accomplish simplifying and streamlining administrative tasks associated with ordering services and devices, reviewing summary and detail reports of both usage and billing, and processing invoices for payment of services provided (Department of Commerce BPA, Exhibit E, Section 1.4 page 5 of 9).

COMPLAINT

54.    QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges FALSE CLAIMS DEFENDANTS also failed to monitor and/or manage an estimated 10,691,655 monthly Zero Usage Lines instances throughout the contract, and failed to suspend or disconnect these lines after three (3) straight months which was represented and committed to the STATE of California and STATE of Nevada government and their participating agencies pursuant to the CWC/WSCA Agreements from 2005-September 2013.  FALSE CLAIMS DEFENDANTS was obligated to provide zero usage monitoring and management to the **701+ Federal Government Agencies/Departments.**

55.    QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges FALSE CLAIMS DEFENDANTS also failed to apply favorable "best value" new activation credits for the **701+ Federal Government Agencies/Department's** newly activated lines.   An estimated 86.1% of the **701+ Federal Government Agencies/Department's** new lines did not receive "a most favored" new activation credit(s) resulting in an estimated $133,338,460 (or an equivalent of $2.17 per line per month recovery over the contract term) potential recovery to the FEDERAL GOVERNMENT.

56.    QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges FALSE CLAIMS DEFENDANTS FALSE CLAIMS DEFENDANTS promised, represented and agreed and committed to the U.S. Department of Commerce to provide each of the Government's fiscal year quarters and are due by the 15th day of the month overage charge summary.

57.    QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges FALSE CLAIMS DEFENDANTS promised similar overage summary and rate plan optimization reports when they represented and agreed and committed to the STATE of California and STATE of Nevada government(s) and their participating agencies pursuant to the CWC/WSCA Agreements from 2005-September 2013, account review and recommendations (ARR)) and rate plan optimization report(s) for each wireless service subscriber.

58.    In particular, FALSE CLAIMS DEFENDANTS agreed that: The optimization reports will be submitted in electronic and/or hardcopy formats on a quarterly basis, by the 15th day of the first month of the new quarter; and they may be required to submit this report to the DGS Contract Administrator and the ATRs at anytime upon request.

59.     FALSE CLAIMS DEFENDANTS understood that the goal of these optimization reports is to ensure that each subscriber is utilizing the most appropriate (rate) plan. This included FALSE CLAIMS DEFENDANTS identifying subscribers that may be consistently incurring overage charges, and therefore should move to a higher plan, or subscribers consistently under-utilizing a plan, and therefore should move to a lower plan. The FALSE CLAIMS DEFENDANTS did this knowing the desire of the FEDERAL GOVERNMENT to have the benefits of the best value and reducing costs contractual terms enforced.

60.     FALSE CLAIMS DEFENDANTS agreed to proactively monitor calling volume and patterns, and to immediately report unusual calling volumes and such as: Usage or cost doubling from the previous month; and Months with zero (0) (minutes/data/text) usage, etc. FALSE CLAIMS DEFENDANTS agreed also to suspend service on existing equipment and complete requested plan changes within 24 hours of notification.

61.     QUI TAM PLAINTIFF alleges, on information and belief, notwithstanding FALSE CLAIMS DEFENDANTS' promise and agreements to provide FALSE CLAIMS DEFENDANTS' Quarterly Account Review Recommendations, (ARRs), FALSE CLAIMS DEFENDANTS failed to perform an estimated 148,040 out of 192,260 (77% failure rate) quarterly price plan and account review and recommendations (ARRs) analysis associated with each FALSE CLAIMS DEFENDANTS' ARRs to the **701+ Federal Government Agencies/Departments**.

62.     Additionally, on those 23% (302,189 out of 1,313,866) instances when FALSE CLAIMS DEFENDANTS did perform PPAs FALSE CLAIMS DEFENDANTS purposefully and knowingly concealed the lowest cost voice flat rate (consumption) plans (VFRPs) from the **701+ Federal Government Agencies/Departments** and instead recommended, as an example, more expensive Monthly Recurring Charge (MRC) 400 minute voice share plans, and recommending low usage lines to a more expensive "add-a-line" rate plans and 100 minute per month voice share plans to the **701+ Federal Government Agencies/Departments**. FALSE CLAIMS DEFENDANTS acted in this matter knowing and continuing to know the FEDERAL **701+ Federal Government Agencies/Departments** desires for best value, and thus deliberately withheld this information to allegedly overbill the **701+ Federal Government Agencies/Departments**.

63.     Additionally, QUI TAM PLAINTIFF alleges, on information and belief, at times throughout the applicable contract periods, FALSE CLAIM DEFENDANTS also made recommended price plan

THE
DOLAN
LAW
FIRM

TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

recommendations and/or changes that their own numbers/analysis showed would <u>increase</u> monthly costs by between 9%, and 12.5%.

64.    QUI TAM PLAINTIFF believes FALSE CLAIM DEFENDANTS knowingly and willingly overcharged the FEDERAL GOVERNMENT throughout the contract period an estimated 34% by:

   a.   Neglecting to perform contractually obligated best value (FAR 9.062) quarterly rate plan optimizations to lower monthly costs for every FEDERAL GOVERNMENT subscriber's wireless line(s).

   b.   Neglecting to provide better (lower cost) "market available" or "most favored customer" rate plans from its Largest Enterprise customers.

   c.   Neglecting to disclose to the FEDERAL GOVERNMENT contractually committed lower cost "market available" wireless rates every six (6) months.

   d.   Neglecting to propose, provide and implement FALSE CLAIM DEFENDANT's $0.00 Monthly Recurring Charge (MRC) plus $.06 per minute voice rate plan routinely on a quarterly basis throughout the contract period.

65.    FALSE CLAIMS DEFENDANTS (may have) "hid" or "concealed[18]" Sprint's Government's $0.00 Monthly Recurring Charge (MRC) plus $.06 per minute voice rate plan to FEDERAL GOVERNMENT'S Telecom Coordinators by using the Excel "hide" and "unhide" row features in their ARR rate plan optimization reports.

66.    By failing to accurately bill, FALSE CLAIMS DEFENDANTS avoided their obligation and agreement to calculate "re-rates" or recalculation of appropriate charges, and credits based on the contractual terms, conditions and wireless carrier rates available in **701+ Federal Government Agencies/Departments** contractual market rates.

67.    Since September 2012, QUI TAM PLAINTIFF, through his direct day-to-day work supplying the list of subpoena items, analysis, reports as an independent consultant to the City of Los Angeles City Controller, a participating entity during the STATE (of CALIFORNIA'S) contract periods, City of L.A.'s Controller, requested from FALSE CLAIMS DEFENDANTS numerous times to provide all cost, usage data and billing formulas that go into their Federal Universal Service

---

[18] Please review Qui Tam Plaintiff's Report: Exhibit A_Sprint_Report_City of LA_Sprint_Dolan Law Firm_SprintCFCA-0023_Version_1.2 (Report's sections 1.6-1.13)

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

Fee (FUSF) charges since January 2005. QUI TAM PLAINTIFF requested FALSE CLAIMS DEFENDANT's provide cost and usage data going back to January 2005. To date, QUI TAM PLAINTIFF has not received these nor FALSE CLAIMS DEFENDANT's FUSF billing formulas.

68.     The FUSF charges are assessed using complicated billing formulas that apply certain percentages to certain categories of the bill, while other categories of the bill are not supposed to be charged at all. Further complicating the FUSF fee (charges), the formula(s) continually changed quarter over quarter (over time).

69.     Although this complaint does not include any recovery from Federal Universal Service Charges, QUI TAM PLAINTIFF believes there are damages of the **701+ Federal Government Agencies/Departments**. There was a serious issue with the FUSF data provided. QUI TAM PLAINTIFF was unable to match up the actual Federal Universal Service Charges in the data FALSE CLAIMS DEFENDANT'S provided with any of the City of Los Angeles invoices.

70.     According to FALSE CLAIMS DEFENDANTS all interstate telecommunications service providers are required to contribute to the Federal Universal Service Fund (FUSF).

71.     According to FALSE CLAIMS DEFENDANTS Telecommunication service providers may also be required to contribute to a State (of California) Universal Service Fund (USF). The funds collected <u>may be used</u> to assist in providing universal service and to a variety of other programs at the state level. **This FALSE CLAIMS DEFENDANT'S charge is not a tax or government-imposed fee.**

72.     Because FALSE CLAIMS DEFENDANT's FUSF is tied to the overall bill, and QUI TAM PLAINTIFF's market rate, optimization, and zero usage re-rate data analysis showed that the City of Los Angeles' bills were inappropriately high, the FUSF charges were inappropriately high as well.

73.     QUI TAM PLAINTIFF's alleges, on information and belief, because FALSE CLAIMS DEFENDANT's FUSF is tied to the overall bill, and QUI TAM PLAINTIFF's market rate, optimization, and zero usage re-rate data analysis showed that the City of Los Angeles' bills were inappropriately high, the FUSF charges were inappropriately high as well with the City of Los Angeles, STATE of CALIFORNIA, GSA and the FEDERAL GOVERNMENT.

74.     QUI TAM PLAINTIFF asserts the lower overall bills that should have been assessed means the FUSF charges should have been lower as well. This means the **701+ Federal Government Agencies/Departments** should recover money in this area and associated surcharges ("taxes") even

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94105
TEL: (415) 421-2800
FAX: (415) 421-2830

if FALSE CLAIMS DEFENDANTS does not have any billing errors in how this formula is assessed.

75.     The market rerates, optimization, and zero usage estimate a recovery of 34% of optimizable costs. Assuming the same 34% recovery rate for FUSCs would equal an estimated 34% recovery from FALSE CLAIMS DEFENDANT to the **701+ Federal Government Agencies/Departments**.

76.     Once FALSE CLAIMS DEFENDANTS provides their actual FUSF charges formulas through discovery, QUI TAM PLAINTIFF can recalculate what the appropriate charges should have been given the lower bills from the market rerate.

77.     QUI TAM PLAINTIFF is informed and believes and upon such information and belief alleges FALSE CLAIMS DEFENDANTS increased its revenues up to an estimated $11.07 per line/month by consistently failing their contract obligations with <u>ANY</u> representations and/or warranties concerning the products made in <u>ANY</u> FALSE CLAIM DEFENDANT'S literature, description, drawings and/or specifications furnished by the Contractor (FALSE CLAIMS DEFENDANTS) based on the adequate billing and usage data FALSE CLAIMS DEFENDANTS provided to QUI TAM PLAINTIFF.

78.     To calculate all estimated Wireless Carrier overcharges, damages, and estimated false claims, QUI TAM PLAINTIFF is informed and believes and upon such information and belief used the following high level overview of the technology and the process steps involved to calculate the estimated recoveries referenced in paragraphs 15-17 for the **701+ Federal Government Agencies/Departments**:

    a.  Format various forms of FALSE CLAIMS DEFENDANT'S data - calculate multiple categories (voice, data, text, etc) of historical usage, cost, and rate plan data for each mobile telephone number, for each month of the FEDERAL GOVERNMENT and City of Los Angeles', a participating entity with the former State of California Wireless Contract (CWC), and current participating entity to the State of California/WSCA contract(s) carrier billing data provided.

    b.  Apply historical usage patterns to various rate plans within QUI TAM PLAINTIFF's database to recalculate the charges that would have incurred under most favored rates in each relevant audit time period, for **701+ Federal Government Agencies / Departments**.

COMPLAINT

c. Identify most cost effective ("superior" and/or "most favored customer") rate plans (voice, data, text, data feature, etc) for each mobile number each month, and compared the projected costs of each plan to the costs actually incurred to calculate recovery from FALSE CLAIMS DEFENDANT'S alleged overcharge opportunities to each FEDERAL GOVERNMENT entity's mobile telephone number during the audit period.

d. Identify most cost effective flat rate plans (voice, data, etc) for each mobile number each month, and compared the projected costs of each plan to the costs actually incurred to calculate recovery from FALSE CLAIMS DEFENDANT'S alleged overcharges to each Government entity's low and medium mobile telephone number (voice and data) usage during the audit period from FALSE CLAIMS DEFENDANT'S .failure to provide $0.00 MRC Voice Flat Rate Plans.

e. Identify zero usage lines to calculate recovery from FALSE CLAIMS DEFENDANT'S failure to monitor, manage and suspend **701+ Federal Government Agencies/Departments**' unnecessary (zero and low usage voice, data, text) lines.

f. Compute credits received for newly activated lines and compare to new activation credits available during the relevant time period to calculate the alleged recovery FALSE CLAIMS DEFENDANT'S failure to provide "most favored customer" new activation credits to the **701+ Federal Government Agencies/Departments**.

g. Identify any incorrect FALSE CLAIMS DEFENDANT'S taxes charged to the **701+ Federal Government Agencies/Departments**, and compute est. recovery amount.

h. In addition to allegedly failing to provide most favored /superior market available rates, plans and features FALSE CLAIMS DEFENDANT'S failure to perform quarterly Rate Plan Analysis (RPAs) and Account Review and Recommendations (ARRs) for each wireless subscriber.

   i. Each of the different potentially recovery areas herein in this complaint is in its own separate category, with its own unique Federal False Claim Act (FFCA) code. The false claim calculation formulas can be adjusted as needed

COMPLAINT

(and correlated with each **FALSE CLAIMS DEFENDANT'S** contract's representations, commitments, obligations, rates; terms and conditions).

79.    Next, QUI TAM PLAINTIFF based upon information and documents obtained by Mr. Knudsen pursuant to the State of California Public Records Act requests and in other ways, alleges, on information and belief, that all of **the 701+ Federal Government Agencies/Departments'** (listed below), Mr. Knudsen determined the estimated <u>average</u> monthly costs (monthly agency spend) for the 2012 Annual Period with FALSE CLAIMS DEFENDANTS are as follows:

|   |   |   |
|---|---|---|
| a. | Total Monthly Costs | $19,887,071 |
| b. | Total Monthly Line Count: | 633,548 |
| c. | Total Number of Monthly Invoices: | 7,701 |
| d. | Total Monthly Spend / Cost Per Line: | $31.39 |
| e. | Total Monthly City/County User Taxes Charged: | $1,058,024 |

80.    Qui Tam Plaintiff alleges, on information and belief and used 2012 average monthly line counts in section 79b to estimate the total lines over the 105 month period from January 2005 - September 2013 (the entire audit period). This line count was then applied to the per line recovery in each category as uncovered from Qui Tam Plaintiff's audit results of Carrier's willfully and knowingly failed at least six (6) contract performance obligations with the State of California's participating entity City of Los Angeles to determine the est. recovery for the **701+ Federal Government Agencies/Departments**. These include the:

a.    $11.07 est. recovery per line Carrier overcharges from FALSE CLAIMS DEFENDANT'S alleged willfully and knowingly failure(s) to provide superior market available rate plans and quarterly rate plan analysis, for total estimated recovery of $680,210,485 ($680.2 Million).

b.    $2.17 per line est. recovery per line from Carrier's alleged willfully and knowingly failure(s) to provide market available new activation credits, for a total estimated recovery of $133,338,460 ($133.33 Million).

c.    $1.67 est. recovery per line from Carrier's alleged willful and knowing failure(s) to charge inappropriately the estimated # of (over) 400 City (Cities) Utilities User Taxes, for total estimated recovery of $102,615,312 ($102.61Million).

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
HE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

d. Adding the three recoveries from items a, b, and c results in a total estimated FALSE CLAIMS DEFENDANT'S overcharge recovery of $ 916,164,257 ($916.16 Million).

e. QUI TAM PLAINTIFF'S application of Treble Damages to the estimated Carrier Overcharges brings the total est. recovery up to $ 2,748,492,773 ($2.75 Billion).

81.     Qui Tam Plaintiff alleges, on information and belief used the estimated 2012 average monthly Total Number of FALSE CLAIMS DEFENDANT'S Invoices from paragraph 79c to estimate the total number of FALSE CLAIMS DEFENDANT'S invoices to the **701+ Federal Government Agencies/Departments** over the 105 month period from January 2005 - September 2013. Qui Tam Plaintiff, alleges, on information and belief then used the:

a. FALSE CLAIMS DEFENDANT'S 98.65% invoice false claim (failure) rate found at the CITY of Los Angeles to determine a total of 797,589 alleged false claims to the **701+ Federal Government Agencies/Departments**.

b. Average of FALSE CLAIMS DEFENDANT'S est. 3.086 False Claims per Invoice found at the CITY of Los Angeles to determine an estimated total of 2,495,042 false claims to the **701+ Federal Government Agencies/Departments**.

82.     QUI TAM PLAINTIFF alleges potential "punitive" penalties/recoveries to the FEDERAL GOVERNMENT using four (4) different False Claim Act penalty scenarios.

a. **Scenario One:** Maximum of One False Claim Penalty Per Invoice, Penalty of $10,000 (instead of $11,000) per False Claim. This means est. 797,589 False Claims as shown in paragraph 81ab, multiplied by $10,000, for total estimated Federal False Claim Recovery of $7,975,890,000 ($7.98 Billion).

b. **Scenario Two**: Maximum of One False Claim Penalty Per Invoice, Penalty of $5,500 per False Claim. This means est. 797,589 False Claims as shown in paragraph 81b multiplied by $5,500, for total False Claim Recovery of $4,386,739,500 ($4.39 Billion).

c. **Scenario Three**: Allows Penalty for Every False Claim on each Invoice, Penalty of $10,000 per False Claim. This means est. 2,495,042 false claims as shown in QUI TAM PLAINTIFF'S analysis, multiplied by $10,000, for total False Claim Recovery of $24,950,420,000 ($24.95 Billion).

d. **Scenario Four**: Allows Penalty for Every False Claim on each Invoice, Penalty of $5,500 per False Claim. This means 2,495,042 false claims as shown in in QUI TAM

THE
ЭOLAN
LAW
FIRM
TRIAL LAWYERS
45 DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO.
CA
94105
L: (415) 421-2800
X: (415) 421-2830

PLAINTIFF'S analysis, multiplied by $5,500, for total False Claim Recovery of $13,722,731,000 ($13.72 Billion from FALSE CLAIMS DEFENDANTS.

83. Qui Tam Plaintiff alleges, on information and belief uses the estimated FALSE CLAIMS DEFENDANTS willfully and knowingly Contract Performance Failure Rates found at the CITY of Los Angeles to determine:

    a. FALSE CLAIMS DEFENDANTS' est. 148,040 missing contractually obligated ARRs. At a penalty of $10,000 each, a total estimated Price Plan Analysis (PPA) Compliance Recovery of $1,480,401,323 ($1.48 Billion).

    b. FALSE CLAIMS DEFENDANTS' 488,333 missing contractually obligated monthly usage reports. At a penalty of $10,000 each, a total estimated Usage Report Penalty of $4,883,693 ($4.88 Billion).

    c. An estimated 808,504 monthly Billing Departments (from STATE Agencies' "Cost Center" Sub Account Numbers) not receiving their contractually obligated consolidated view of FALSE CLAIMS DEFENDANT'S monthly bills. At a penalty of $10,000 each, a total est. Consolidated View of Monthly Bills Recovery of $8,085,038,811 ($8.1 Billion).

    d. For Total estimated Compliance Recovery of $88,202,267,929 (paragraphs 83a + 83b + 83c) from FALSE CLAIMS DEFENDANTS.

84. QUI TAM PLAINTIFF QUI TAM PLAINTIFF is informed, believes and upon such information and belief alleges the FALSE CLAIM DEFENDANT'S overcharges are conservative estimates and that the actual recovery values to the FEDERAL GOVERNMENT would be higher, by as much as 73% (as much as $19.45 per line), if adequate billing data requested many times for Periods "B/C" (January 2005-December 2012 audit periods) were provided by FALSE CLAIMS DEFENDANT for the following reasons:

85. Reason #1: FALSE CLAIM DEFENDANTS did not offer "market available, competitive" voice flat rate (consumption) plans notwithstanding that they represented and agreed to provide the lowest voice flat rate plan pricing between October 2006 to present to the FEDERAL GOVERNMENT.

86. Reason #2: Nor did FALSE CLAIM DEFENDANTS provide to the FEDERAL GOVERNMENT available superior rates from FALSE CLAIM DEFENDANTS' large (Enterprise) customers.

THE
ЭOLAN
LAW
FIRM
TRIAL LAWYERS
4E DOLAN BUILDING
435 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

87.     Reason #3:  DEFENDANT promised In 2006 Free incoming calls on Nextel Blackberry Plans and SLS wireless lines to the FEDERAL GOVERNMENT.

88.     Reason #4: FALSE CLAIMS DEFENDANT agreed to and promised incoming voice calls to subscriber do not count against subscriber's monthly cellular minutes on DEFENDANT/Nextel Blackberry Plans (Exhibit A, Plaintiff's City of L.A. Contract Compliance Report V 1.2, Chart 5.2), first red arrow) in their March 10, 2006 Technical Response to Western States Contracting Alliance (including the City of Los Angeles).

89.     Reason #5: In addition, FALSE CLAIMS DEFENDANT also agreed to and promised to provide free incoming calls on second line service (SLS) plans (Exhibit A, Plaintiff's City of L.A. Contract ComplianceReport V. 1.2 Chart 5.2, second red arrow) to the FEDERAL GOVERNMENT.

90.     PLAINTIFF, alleges, on information and belief, FALSE CLAIMS DEFENDANT may be lumping or combining its (free) incoming cellular minutes in with FALSE CLAIMS DEFENDANT'S Mobile to Mobile minutes, or perhaps FASLE CLAIMS DEFENDANT are counting them against their "Any Time" minutes to generate subscriber, account overcharges and increased FALSE CLAIMS monthly revenues.

91.     To validate PLAINTIFF's belief, and validate this reason that DEFENDANT's OVERCHARGES are significantly understated by as much as 73%, PLAINTIFF has repeatedly requested FALSE CLAIMS DEFENDANT break out the following electronic billing data from DEFENDANT's billing codes (referenced on page 2 of FALSE CLAIMS DEFENDANT's monthly invoices to the FEDERAL GOVERNMENT): Free Calls (FC); Partial Free (PF); Peak Period (PP); Off Peak Period (OP); Mobile to Mobile (MM); Call Waiting (CW); Wireless Priority (WP) and Anytime Calls (AU).

92.     Reason #6: Additionally, calls from FALSE CLAIM DEFENDANTS' subscribers for Voice Mail access allegedly should have been Free (Exhibit A, Exhibit A, Plaintiff's City of L.A. Contract Compliance Report's Section 5.10).  QUI TAM PLAINTIFF believes and upon such information provided by FALSE CLAIM DEFENDANT CITY may recover as much as $4,699,894 (currently not reflected in the FALSE CLAIM DEFENAND'S overcharges estimate) from alleged FALSE CLAIM DEFENDANT's overcharges on subscriber's calls for their voice mails (Exhibit A, Plaintiff's City of L.A. Contract Compliance Sprint City of L.A. Compliance Report Section 5.11).

THE
ƆOLAN
LAW
FIRM
TRIAL LAWYERS
IE DOLAN BUILDING
438 MARKET STREET
AN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

## CAUSE OF ACTION FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT 31 U.S.C. CODE SECTION 3729, ET. SEQ.) AGAINST ALL FALSE CLAIMS DEFENDANTS

93.     QUI TAM PLAINTIFF repeats and repleads and incorporates by reference each and every one of the allegations contained in paragraph 1-92, as though fully set forth herein.

94.     FALSE CLAIMS DEFENDANTS submitted or caused to be submitted false and fraudulent claims for payment to the appropriate officers and/or employees and/or agents of the FEDERAL GOVERNMENT under the provisions of the aforesaid contract(s)

95.     FALSE CLAIMS DEFENDANTS knowingly presented or caused to be presented to an officer or employee of the CITY false or fraudulent claims for approval to the damage of the FEDERAL GOVERNMENT.

96.     In performing the acts herein above alleged FALSE CLAIMS DEFENDANTS knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the FEDERAL GOVERNMENT.

## PRAYER FOR RELIEF

WHEREFORE, QUI TAM PLAINTIFF prays for judgment against the FALSE CLAIMS DEFENDANTS, and each of them, as follows:

97.     Judgment against the FALSE CLAIMS DEFENDANTS in an amount equal to three times;

98.     The damages sustained by the FEDERAL GOVERNMENT as a result of FALSE CLAIMS DEFENDANTS' Conduct;

99.     That the Qui Tam Plaintiff be awarded the maximum award allowed pursuant to the Federal False Claims Act, under Government Code Section 3279, et. Seq;

100.    For Attorney's fees, Plaintiff's carrier contract compliance/telecom bills audit costs and other costs, according to Proof; and

101.    For such other and further relief as the Court deems just and proper. Including but not limited to Fees by Statute according to proof.

102.    Injunctive relief to prevent further harm.

Dated: September 2, 2013                    **THE DOLAN LAW FIRM**

THE
DOLAN
LAW
FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO,
CA
94105
L: (415) 421-2800
X: (415) 421-2830

COMPLAINT

By: _____
Christopher Dolan, Esq.
Aimee E. Kirby, Esq.
Mary Barnes, Esq.
Attorneys for QUI TAM PLAINTIFF